UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

DISC & TAPE, INC., *doing business as*
DISCONTENT; STACEY ANTHONY;
RUSSELL STEELE; and JESSICA WOLF,

      Plaintiffs,         **MEMORANDUM OF LAW & ORDER**
v.                                Civil No. 12-171

THE CITY OF MOORHEAD, MINNESOTA,
*a municipal corporation*,

      Defendant.

---

Randall D.B. Tigue and Rachel K. Nelson, Randall D.B. Tigue, P.A., Counsel for Plaintiffs.

James J. Thomson, Mary D. Tietjen, and Peter G. Mikhail, Counsel for Defendant.

---

**I.**    **Introduction**

This matter is before the Court on Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order [Docket No. 3]. The Court heard oral argument on February 10, 2012.

**II.**    **Background**

Plaintiff Disc & Tape, Inc. is a corporation that runs the "Discontent" retail store in Moorhead, Minnesota, where Plaintiffs Stacey Anthony, Russell Steele,

1

and Jessica Wolf work as sales clerks.  Discontent, which has been in business since 1991, is licensed to sell tobacco products and sells numerous pipes and other smoking devices, such as bongs and hookahs.

According to the City, reports from neighboring communities indicated that drug users were obtaining drug paraphernalia from shops in the City.  In November 2011, Defendant City of Moorhead ("the City") enacted Ordinance No. 2011-11 ("Ordinance"), which makes unlawful the sale and delivery of "drug paraphernalia."  The Ordinance states:

> A person may not deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, if that person knows or should reasonably know that the drug paraphernalia will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, enhance, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of Minnesota Statutes Chapter 152.  Any violation of this section is a misdemeanor.

Ordinance § 1.B.  The Ordinance defines "drug paraphernalia" as

> all equipment, products, and materials of any kind, which are used, intended for use, or designed for use in planting, propagating, cultivating, growing, harvesting, manufacturing, compounding, enhancing, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of Minnesota Statutes Chapter 152.

Ordinance § 1.C(a). The Ordinance excludes hypodermic needles and syringes from this definition and then presents a non-exhaustive list of items deemed to be drug paraphernalia, which includes:

> a. Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls.
> b. Water pipes.
> c. Carburetion tubes and devices.
> d. Smoking and carburetion masks.
> e. Objects, sometimes commonly referred to as roach clips, used to hold burning material, for example, a marijuana cigarette, that has become too small or too short to be held in the hand.
> f. Miniature cocaine spoons and cocaine vials.
> g. Chamber pipes.
> h. Carburetor pipes.
> i. Electric pipes.
> j. Air-driven pipes.
> k. Chillums.
> l. Bongs.
> m. Ice pipes or chillers.

Ordinance § 1.C(c)(11). The Ordinance further sets out "Drug Paraphernalia Guidelines"—factors for determining whether an item is drug paraphernalia, including:

> (a) Statements by an owner or by anyone in control of the object concerning its use.
> (b) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance.

(c) The proximity of the object, in time and space, to a direct violation of this ordinance.
(d) The proximity of the object to controlled substances.
(e) The existence of any residue of controlled substances on the object.
(f) Direct or circumstantial evidence of the intent of an owner, or of any person in control of the object, to deliver the object to another person whom the owner or person in control of the object knows, or should reasonably know, intends to use the object to facilitate a violation of this ordinance. The innocence of an owner, or of any person in control of the object, as to a direct violation of this ordinance may not prevent a finding that the object is intended or designed for use as drug paraphernalia.
(g) Instructions, oral or written, provided with the object concerning the object's use.
(h) Descriptive materials accompanying the object, which explain or depict the object's use.
(i)  National and local advertising concerning the object's use.
(j)  The manner in which the object is displayed for sale.
(k) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, for example, a licensed distributor or dealer of tobacco products.
(l)  Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise.
(m) The existence and scope of legitimate uses for the object in the community.
(n)  Expert testimony concerning the object's use.
(o) The actual or constructive possession by the owner or by a person in control of the object or the presence in a vehicle or structure where the object is located of written instructions, directions, or recipes to be used, or intended or designed to be used, in manufacturing, producing, processing, preparing, testing, or analyzing a controlled substance.

Representatives of the City police department visited Discontent on December 21, 2011, before the Ordinance went into effect. A transcript of an audio recording of that visit has been submitted by Plaintiffs. (Tepley Supp. Aff., Ex. A.) During the visit, police officers identified to Plaintiffs the items in Discontent that the officers considered to be drug paraphernalia and therefore prohibited by the Ordinance. Such items included "water bongs," "short metal and glass pipes," and "vaporizers." (Id. at 5-7.) The officers also identified items, such as "traditional hookahs," "traditional pipe[s]," "scales," and "grinders" which would not be considered drug paraphernalia under the Ordinance. (Id.)

According to the transcript, the officers stated that "nobody is going to jail over this." (Id. at 1.) Instead, the officers stated that, once the Ordinance went into effect, they would visit the shop and determine if drug paraphernalia was still being sold. If the shop was not in compliance with the Ordinance, the officers "would issue citations and . . . have a court date issued then." (Id. at 2.)

The transcript provided by Plaintiffs tracks notes taken by one of the City police officers at the meeting (City Opp., Ex. 2.). The officer's notes indicate that the City hoped for "voluntary compliance" with the Ordinance. After the

December 21, 2011 meeting at Discontent, the City's Chief of Police sent Plaintiffs a letter dated December 30, 2011, which stated:

> As discussed in our meeting, there were several items on display in your business that will constitute a violation of the new ordinance. We would like businesses to come into voluntary compliance when the ordinance takes effect on January 11, 2012. Failure to remove the items we discussed could result in citations and prosecution.

The City states that other businesses were affected by the Ordinance: "Mother's Records," two "Mellow Mood" stores, and "Pyromaniacs." According to the City, Mother's Records remains in business with a modified inventory which complies with the Ordinance. One of the two Mellow Mood stores is still open, also with a modified inventory that complies with the Ordinance. Finally, Pyromaniacs also modified its inventory but is currently closed pending a remodeling project to add a hookah lounge. Plaintiffs have apparently refused to modify their inventory and instead decided to close Discontent on the day the Ordinance went into effect. According to Plaintiffs, a movement has begun to repeal the Ordinance. Nearly 3,000 registered voters have signed a referendum petition seeking repeal of the Ordinance in the next election.

Plaintiffs have brought this action seeking to enjoin enforcement of the Ordinance as announced by the City.

**III.    Discussion**

    **A.    Standard**

To obtain preliminary injunctive relief, Plaintiffs must show a likelihood of irreparable harm in the absence of the injunction.  Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 22 (2008).  The Court also considers the balance between such harm and the injury that granting the injunction will inflict on other parties, Plaintiffs' likelihood of success on the merits, and the public interest.  Dataphase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981) (en banc).

Because they seek to enjoin "government action based on presumptively reasoned democratic processes," Plaintiffs must make a threshold showing that they are "likely to prevail on the merits."  Planned Parenthood v. Rounds, 530 F.3d 724, 732-733 (8th Cir. 2008) (en banc).

    **B.    Likelihood of Success on the Merits**

Plaintiffs concede that the Ordinance is constitutional as written.  That conclusion is difficult to avoid given the Supreme Court's opinion in Posters 'N' Things, Ltd. v. United States, 511 U.S. 513 (1994), which upheld a very similar drug paraphernalia statute.  Plaintiffs argue, however, that the City's "announced practice to enforce the Ordinance against all of Plaintiffs' products

based upon their physical characteristics alone, regardless of the intent of the seller or purchasers" would run contrary to rulings of the Supreme Court and the Eight Circuit. (Plaintiffs Mem. at 7.)

### 1. The City's Announced Enforcement Practice

Based on all of the evidence presented to the Court so far, including a transcript of the meeting between City officials and Plaintiffs, the Court cannot agree with Plaintiffs that the City intends to "enforce the Ordinance against all of Plaintiffs' products." Rather, it seems clear that the City intends to enforce the Ordinance against a subset of products—namely, the products which the City considers to be drug paraphernalia under the Ordinance. Statements made by the City in the transcript provided by Plaintiffs make clear that many items sold in Discontent—including hookahs, traditional pipes, grinders, and scales—would not be affected by the Ordinance. The City's intention to enforce the Ordinance in this limited fashion is corroborated by the notes taken by a City police officer present at the meeting, the letter sent to Plaintiffs by the Chief of Police, and by the City's enforcement of the Ordinance at other shops in the City that continue to sell hookahs and other permissible smoking items.

Plaintiffs assertion that the City seeks to prohibit "all" of Discontent's products thus has no basis and is refuted by Plaintiffs' own submissions to this Court. The City's "announced practice" is to apply the Ordinance to particular items—water bongs, short pipes, and vaporizers—which the City deems to be drug paraphernalia under the Ordinance.

### 2. Constitutionality of the City's Announced Practice

The sole question before this Court is whether the City's announced practice to apply the ordinance to the sale of water bongs, short pipes, and vaporizers complies with relevant Supreme Court and Eighth Circuit precedent.

Plaintiffs contend that prohibitions of "the possession or distribution of drug paraphernalia cannot define paraphernalia based solely upon the physical characteristics of the object in question" and that such a prohibition must require an "overt manifestation of specific intent by the possessor or distributor" of the item in question for that item to be used with illegal drugs. (Plaintiffs Mem. at 10.)

#### a. Definition of Drug Paraphernalia

While Plaintiffs urge that any analysis of whether an item is "drug paraphernalia" must include an analysis of subjective intent, the Supreme Court

squarely rejected that contention when interpreting a federal statute similar to the Ordinance at issue in this case. The plaintiffs in Posters 'N' Things challenged the constitutionality of the Mail Order Drug Paraphernalia Control Act, 21 U.S.C. § 857,[1] which prohibited the distribution of "drug paraphernalia." 511 U.S. at 518. Using language nearly identical to the Ordinance at issue here, the federal statute defined "drug paraphernalia" as "items 'primarily intended . . . for use' with controlled substances and items 'designed for use' with such substances." Id. at 518.

The Supreme Court resolved a split in precedent over interpretation of this definition. The Court rejected a view that the term "intended for use" required proof that a defendant prosecuted under the statute intended for the items in question to be used with illegal drugs. The Court concluded instead that the definition of "drug paraphernalia" in the statute—a definition nearly identical to that at issue here—"establishe[d] objective standards for determining what constitutes drug paraphernalia" rather than "serving as the basis for a subjective scienter requirement." Id. at 521-522 (emphasis added). The term "primarily

---

[1] The statute challenged in Posters 'N' Things was nearly identical in all relevant respects to the current federal drug paraphernalia prohibition codified at 21 U.S.C. § 863.

intended . . . for use," the Court explained "is to be understood objectively and refers generally to an item's likely use." Id.

In short, the Supreme Court rejected the argument now advanced by Plaintiffs—that a drug paraphernalia prohibition "cannot define paraphernalia based solely upon the physical characteristics of the object in question." (See Plaintiffs Mem. at 10.) The Court instead made clear that "[t]he objective characteristics of some items establish that they are designed specifically for use with controlled substances." Posters 'N' Things, 511 U.S. at 518. "Such items, including bongs, cocaine freebase kits, and certain kinds of pipes, have no other use besides contrived ones (such as use of a bong as a flower vase)." Id. These items—specifically enumerated in the federal statute contested in Posters 'N' Things and also in the Ordinance at issue here—are "*per se* drug paraphernalia." Id. at 526.

The cases cited by Plaintiffs in support of their assertion that a definition of "drug paraphernalia" must include a subjective intent requirement all predate the Supreme Court's dispositive ruling in Posters 'N' Things, and some also involved substantially different statutes and ordinances. See Casbah, Inc. v. Thone, 651 F.2d 551 (8th Cir. 1981); Geiger v. City of Eagan, 618 F.2d 26 (8th Cir.

1980); <u>City of St. Paul v. Various Items of Drug Paraphernalia</u>, 474 N.W. 2d 413 (Minn. App. Ct. 1991).

Some of the items sold at Discontent which the City has characterized as drug paraphernalia—bongs—are specifically enumerated in the Ordinance as an example of per se drug paraphernalia. Bongs were also highlighted by the Supreme Court as having "no other use, besides contrived ones." <u>Posters 'N' Things</u>, 511 U.S. at 518. The vaporizers and short pipes identified by the City's officers also fall into a category of items which can be objectively categorized as drug paraphernalia. Although Plaintiffs have submitted an affidavit from a self-described "pipeologist" who states that all of the items sold at Discontent are meant for use with tobacco (Silber Aff. ¶ 13-17), the City has submitted affidavits from law enforcement officers which indicate that the targeted items are designed for use with illegal drugs, are used almost exclusively with illegal drugs, and "are routinely seized during the execution of drug-related search warrants" (Stuvland Aff. ¶ 4; Penas Aff. ¶ 9). Such items qualify as drug paraphernalia under the Ordinance.

Based on the limited record before it, the Court cannot conclusively determine the status of each and every item sold at Discontent. Nonetheless,

nothing in the record indicates that the City intends to apply a definition of "drug paraphernalia" contrary to that set out in the Ordinance.

### b. Scienter Requirement

To say that the definition of "drug paraphernalia" is objective and does not depend on a defendant's subjective intent is not to say that there is no scienter requirement in the Ordinance. The Ordinance itself provides:

> A person may not deliver . . . drug paraphernalia, if that person <u>knows or should reasonably know</u> that the drug paraphernalia will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, enhance, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of Minnesota Statutes Chapter 152.

Ordinance § 1.B. Thus, after establishing that a particular item sold or distributed by a defendant meets the objective definition of "drug paraphernalia," the City will have to show that a defendant knew or reasonably should have known that the item would be used with illegal drugs.[2] The City does not have to prove "overt manifestation of <u>specific intent</u> by the possessor or

---

[2] In adopting this "knows or should reasonably know" scienter requirement, the Ordinance essentially adopts the knowledge requirement found in <u>Posters 'N' Things</u>. There, while the statute itself did not expressly include a scienter requirement, the Court concluded that the statute implied a requirement that "the Government must establish that the defendant knew that the items at issue [were] likely to be used with illegal drugs." 511 U.S. at 524.

distributor," as Plaintiffs contend. (Plaintiffs Mem. at 10 (emphasis added).) This knowledge scienter requirement helps the Ordinance "avoid[] any [constitutional] vagueness problem." Posters 'N' Things, 511 U.S. at 526.

Plaintiffs seem to argue that the City cannot show that they have the requisite knowledge that their products are likely to be used with illegal drugs. They note that signs posted at Discontent state that the items sold in the shop are not to be used for illegal purposes and that employees are instructed not to sell products to customers who state that they intend to use an item with illegal drugs. Such signs and policies do not immunize Plaintiffs from the knowledge that they are selling products likely to be used with illegal drugs. As the Supreme Court explained in Posters 'N' Things:

> The purpose of a seller of drug paraphernalia is to sell his product; the seller is indifferent as to whether that product ultimately is used in connection with illegal drugs or otherwise. If [a drug paraphernalia prohibition] required a purpose that the items be used with illegal drugs, individuals could avoid liability for selling bongs and cocaine freebase kits simply by establishing that they lacked the "conscious object" that the items be used with illegal drugs.

511 U.S. at 523. The Ordinance at issue here specifically avoids the requirement that a seller have the "conscious object" that his wares be used with illegal drugs by requiring only that a seller <u>know or reasonably should know</u> of such use.

Particularly in light of Plaintiffs' contact with City officials over the past months and the fact that Discontent has been selling such products for many years, the Court doubts that Plaintiffs could plausibly argue that they lack knowledge that products such as bongs, vaporizers, and short pipes—as opposed to hookahs and traditional pipes—are used with illegal drugs. Of course, it will be the City's burden to prove such knowledge upon prosecution of a defendant accused of violating the Ordinance. Nothing before the Court indicates that the City has ignored this knowledge requirement in its attempts to enforce the Ordinance thus far.

For all of these reasons, the Court concludes that Plaintiffs are unlikely to succeed on the merits of their claim that the City's announced enforcement policy varies from the written language of the Ordinance or from established Supreme Court precedent.

### C. Irreparable Harm

The Court also concludes that Plaintiffs have not made the requisite showing of irreparable harm. "In order to demonstrate irreparable harm, a party must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief." Iowa Util. Bd. v. F.C.C., 109 F.3d

418, 425 (8th Cir. 1996). Economic loss is not generally considered irreparable harm, although such harm may be found "where the loss threatens the very existence of a [movant's] business." Packard Elevator v. I.C.C., 782 F.2d 112, 115 (8th Cir. 1986) (quoting Wisc. Gas Co. v. F.E.R.C., 758 F.2d 669, 354 (D.C. Cir. 1985)).

Plaintiffs argue that their business will not be able to continue to operate in the absence of an injunction because of their fear of prosecution. The City responds that Plaintiffs need not fear prosecution if they comply with the Ordinance. Moreover, the City Police Chief has stated that no items would be confiscated from the shop and that no arrests would be made; instead a complaint alleging violation of the ordinance would be filed with a court date to follow. The City further argues that monetary damages could adequately compensate Plaintiffs if they were to ultimately succeed with their claims.

While the threat of total loss of a business may constitute irreparable harm, a movant must still "substantiate the claim that irreparable harm is 'likely' to occur." Id. Here, other shops affected by the Ordinance have been able to remain in business with a modified inventory. Plaintiffs should have no fear of reopening Discontent to sell tobacco or products such as hookahs, rolling papers,

and traditional pipes—all of which the City does not consider to be drug paraphernalia. In sum, the harm suffered by Plaintiffs in the absence of an injunction is not irreparable.

Because the Court concludes that Plaintiffs are unlikely to succeed on the merits of their claim and are unable to show irreparable harm, the Court cannot grant Plaintiffs the preliminary injunctive relief that they request.

Accordingly, based on the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Plaintiffs' Motion for Preliminary Injunction and Temporary Restraining Order [Docket No. 3] is **DENIED**.

Dated:   February 22, 2012                    s/ Michael J. Davis
                                                                     Michael J. Davis
                                                                     Chief Judge
                                                                     United States District Court