UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

DISC & TAPE, INC., d/b/a
Discontent; STACEY ANTHONY;
RUSSELL STEELE; and JESSICA
WOLF,

        Plaintiffs,

v.                                 **MEMORANDUM OF LAW & ORDER**
                                  Civil File No. 12-171 (MJD/LIB)

THE CITY OF MOORHEAD,
Minnesota, a municipal
corporation,

        Defendant.

Randall D. B. Tigue and Rachel K. Nelson, Randall Tigue Law Office, PA, Counsel for Plaintiffs.

James J. Thomson, Mary D. Tietjen, and Peter G. Mikhail, Kennedy & Graven, Chartered, Counsel for Defendant.

## I.   INTRODUCTION

This matter is before the Court on Defendant's Motion for Summary Judgment. [Docket No. 30] The Court heard oral argument on November 21, 2012. For the reasons that follow, the Court grants Defendant's motion.

## II.   BACKGROUND

1

### A.     Factual Background

#### 1.     Origin of the Ordinance

Plaintiff Disc & Tape, Inc. formerly operated a store known as "Discontent" in Moorhead, Minnesota.  (Tepley Aff. ¶¶ 1-2.)  Discontent regularly sold novelties, tobacco, smoking herbs, and smoking paraphernalia. (Id. ¶¶ 3-5.)

In early 2011, Defendant City of Moorhead, Minnesota ("the City") began to consider passing a drug paraphernalia ordinance.  (Ebinger Aff. ¶ 2.)  The ordinance was considered because the City had received information from nearby law enforcement agencies about illegal drug products from Moorhead. (Id.)  Moorhead Police Chief David Ebinger decided that the City needed a drug paraphernalia ordinance to clarify the legality of certain items not covered by Minnesota state law and to create uniformity in the drug paraphernalia laws in the Fargo-Moorhead area.  (Id.)

On September 21, 2011, the Moorhead Police Department and the Clay County Attorney's Office held a meeting with Moorhead business owners who would likely be impacted by the proposed drug paraphernalia ordinance.  (Def. Ex. 1, Sept. 12, 2011 Letters to Businesses; Ebinger Aff. ¶ 3.)  Representatives of Discontent attended, along with representatives from other businesses.  (Ebinger

Aff. ¶ 3.) Ebinger and a representative from the Clay County Attorney's Office explained the proposed ordinance and its possible impact on the businesses in attendance; provided a general idea of the items that the police department thought would be included in the phrase "drug paraphernalia;" and opined on the types of items that were not included in the ordinance. (Id.)

### 2.     The Language of the Ordinance

On November 28, 2011, the Moorhead City Council adopted the Drug Paraphernalia Ordinance, Ordinance No. 2011-11 ("Ordinance"). (Ebinger Aff. ¶ 4; Compl., Ex. A.) The Ordinance became effective on January 11, 2012. (Penas Aff. ¶ 2.)

> The Ordinance states:
>
> A person may not deliver, possess with intent to deliver, or manufacture with intent to deliver, drug paraphernalia, if that person knows or should reasonably know that the drug paraphernalia will be used to plant, propagate, cultivate, grow, harvest, manufacture, compound, enhance, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance in violation of Minnesota Statutes Chapter 152. Any violation of this section is a misdemeanor.

Ordinance § 1.B. The Ordinance defines "drug paraphernalia" as

> all equipment, products, and materials of any kind, which are used, intended for use, or designed for use in planting, propagating,

>cultivating, growing, harvesting, manufacturing, compounding, enhancing, converting, producing, processing, preparing, testing, analyzing, packaging, repackaging, storing, containing, concealing, injecting, ingesting, inhaling, or otherwise introducing into the human body a controlled substance in violation of Minnesota Statutes Chapter 152.

Ordinance § 1.C(1). The Ordinance excludes hypodermic needles and syringes from this definition and then presents a non-exhaustive list of items deemed to be drug paraphernalia:

>Objects used, intended for use, or designed for use in ingesting, inhaling, or otherwise introducing controlled substances to include but not limited to marijuana, cocaine, hashish, or hashish oil into the human body, including:
>
>a. Metal, wooden, acrylic, glass, stone, plastic, or ceramic pipes with or without screens, permanent screens, hashish heads, or punctured metal bowls.
>
>b. Water pipes.
>
>c. Carburetion tubes and devices.
>
>d. Smoking and carburetion masks.
>
>e. Objects, sometimes commonly referred to as roach clips, used to hold burning material, for example, a marijuana cigarette, that has become too small or too short to be held in the hand.
>
>f. Miniature cocaine spoons and cocaine vials.
>
>g. Chamber pipes.

    h. Carburetor pipes.

    i. Electric pipes.

    j. Air driven pipes.

    k. Chillums.

    l. Bongs.

    m. Ice pipes or chillers.

Ordinance § 1.C(c)(11). The Ordinance further sets out "Drug Paraphernalia Guidelines"—factors for determining whether an item is drug paraphernalia, including:

    (a) Statements by an owner or by anyone in control of the object concerning its use.

    (b) Prior convictions, if any, of an owner, or of anyone in control of the object, under any state or federal law relating to any controlled substance.

    (c) The proximity of the object, in time and space, to a direct violation of this ordinance.

    (d) The proximity of the object to controlled substances.

    (e) The existence of any residue of controlled substances on the object.

    (f) Direct or circumstantial evidence of the intent of an owner, or of any person in control of the object, to deliver the object to another person whom the owner or person in control of the object knows, or

should reasonably know, intends to use the object to facilitate a violation of this ordinance. The innocence of an owner, or of any person in control of the object, as to a direct violation of this ordinance may not prevent a finding that the object is intended or designed for use as drug paraphernalia.

(g) Instructions, oral or written, provided with the object concerning the object's use.

(h) Descriptive materials accompanying the object, which explain or depict the object's use.

(i) National and local advertising concerning the object's use.

(j) The manner in which the object is displayed for sale.

(k) Whether the owner, or anyone in control of the object, is a legitimate supplier of like or related items to the community, for example, a licensed distributor or dealer of tobacco products.

(l) Direct or circumstantial evidence of the ratio of sales of the object or objects to the total sales of the business enterprise.

(m) The existence and scope of legitimate uses for the object in the community.

(n) Expert testimony concerning the object's use.

(o) The actual or constructive possession by the owner or by a person in control of the object or the presence in a vehicle or structure where the object is located of written instructions, directions, or recipes to be used, or intended or designed to be used, in manufacturing, producing, processing, preparing, testing, or analyzing a controlled substance.

Ordinance § 1.D.

### 3. Police Visit to Discontent

Representatives of the Moorhead Police Department met with all affected businesses regarding the Ordinance on December 20 and 21, 2011. (Ebinger Aff. ¶ 4; Penas Aff. ¶ 5.)

On December 21, 2011, Moorhead Police Lieutenant Brad Penas, Detective Bradley Stuvland, and Detective Larson visited Discontent. (Penas Aff. ¶ 6; Stuvland Aff. ¶ 3.) Thomas Tepley, principal of Disc & Tape, which owns Discontent; an attorney; and another Discontent employee were present during the meeting. (Penas Aff. ¶ 6; Supp. Tepley Aff. ¶ 1.) Tepley had the meeting's conversation recorded and then had the recording transcribed. (Penas Aff. ¶ 6; Supp. Tepley Aff. ¶¶ 3-5; Supp. Tepley Aff., Ex. A, Dec. 20, 2011 Transcript ("Transcript").) Penas also took written notes of the meeting. (Def. Ex. 2, Penas Notes; Penas Aff. ¶ 5.)

During the visit, police officers identified the items in Discontent that the officers considered to be drug paraphernalia and therefore prohibited by the Ordinance. Such items included "water bongs," "short metal and glass pipes," "vaporizers," and dugouts. (Transcript 5-7.) The officers also identified items, such as "traditional hookahs," "traditional pipes," "scales," and "grinders," which would not be considered drug paraphernalia under the Ordinance. (Id. 4-

7.) The prohibited items constituted a substantial part of Discontent's inventory, perhaps up to 80%. (Penas Aff. ¶ 9.)

According to the transcript, the officers stated that "nobody is going to jail over this." (Transcript 1; see also Penas Notes ("We were clear that arrests would not be made and subjects in violation would be tab charged with a court date.").) Instead, the officers stated that, once the Ordinance went into effect, they would visit the shop and determine if drug paraphernalia was being sold. (Transcript 2.) If the shop was not in compliance with the Ordinance, the officers "would issue citations and . . . have a court date issued then." (Id.)

### 4. Follow-Up Letter

On December 30, 2011, the City sent Tepley a follow-up letter, which stated:

> As discussed in our meeting, there were several items on display in your business that will constitute a violation of the new ordinance. We would like businesses to come into voluntary compliance when the ordinance takes effect on January 11, 2012. Failure to remove the items we discussed could result in citations and prosecution.

(Def. Ex. 3.)

Tepley closed Discontent on January 11, 2012. ([Docket No. 5] First Tepley Aff. ¶ 17.) He avers that he will not reopen it unless he receives injunctive relief from this Court. (Id. ¶ 18.)

### 5. Other Moorhead Businesses

Four other Moorhead businesses were affected by the Ordinance: Mother's Records, two Mellow Mood stores, and Pyromaniacs. (Penas Aff. ¶ 10.) Mother's Records remains in business with a modified inventory which complies with the Ordinance. (Id.) Penas asserts that one of the two Mellow Mood stores is still open, also with a modified inventory that complies with the Ordinance. (Id.) The owners of Mellow Mood voluntarily worked with the police department to modify Mellow Mood's inventory. (Id.) Tepley avers that, in fact, both Mellow Mood stores have now gone out of business. (Tepley Aff. ¶ 8.) Penas avers that Pyromaniacs modified its inventory to be in compliance with the Ordinance, but has temporarily closed its business to remodel to add a hookah lounge. (Penas Aff. ¶ 10.) It has now reopened in Discontent's previous location. (Tepley Aff. ¶ 9.)

### 6. Current Enforcement of the Ordinance

The Moorhead Police Department's official policy is to enforce the Ordinance as it is written. (Ebinger Aff. ¶ 5.) The policy does not include arrest or confiscation of any products. (Id.) The City has not yet taken any enforcement action against Plaintiffs. (Penas Aff. ¶ 11.)

### B. Procedural History

On January 23, 2012, Plaintiffs Disc & Tape, Inc. doing business as Discontent, Discontent employee Stacey Anthony, Discontent employee Russell Steele, and Discontent employee Jessica Wolf filed a Complaint against the City in this Court. The Complaint alleges: Count One: Violation of Civil Rights under 42 U.S.C. § 1983. Count One is based on the allegation that the City's announced enforcement practice is unconstitutionally vague, violates the equal protection clause of the Fourteenth Amendment, and will subject Plaintiffs to unlawful arrest without probable cause in violation of the Fourth and Fourteenth Amendments. The Complaint also alleges Count Two: Violation of City Ordinance. Count Two is based on the allegation that the City's intended enforcement practice of the Ordinance is not supported by the plain language of the Ordinance itself. Specifically, the City asserts a right to arrest Plaintiffs for selling pipes based solely on their physical characteristics, regardless of the

10

intent of the seller or the purchaser. The Complaint further alleges Count Three: Equity and Irreputable Injury, seeking injunctive relief.

On January 26, 2012, Plaintiffs filed a Motion for Preliminary Injunction and Temporary Restraining Order. [Docket No. 3]

On February 22, 2012, the Court denied Plaintiffs' motion for a preliminary injunction. <u>Disc & Tape, Inc. v. City of Moorhead, Minn.</u>, Slip Copy, Civil No. 12–171, 2012 WL 591668 (D. Minn. Feb. 22, 2012). The Court held that Plaintiffs were unlikely to succeed on the merits of their claim because the United States Supreme Court had upheld a very similar drug paraphernalia statute in <u>Posters 'N' Things</u>; the evidence was that the City intended to enforce the Ordinance as written; there is no requirement of a subjective intent in the definition of drug paraphernalia; and the Ordinance's objective scienter requirement (that the defendant knew or reasonably should have known that the item would be used with illegal drugs) is constitutional. <u>Id.</u> at *3-*6. The Court pointed out that the City would have the burden of proving objective intent if it actually initiated a prosecution. <u>Id.</u> at *6. The Court also concluded that Plaintiffs did not face irreparable harm because other businesses had managed to stay in business with a modified inventory. <u>Id.</u> at * 7.

The City now moves for summary judgment on all claims against it.

**III.   DISCUSSION**

    **A.   Summary Judgment Standard**

Summary judgment is appropriate if, viewing all facts in the light most favorable to the non-moving party, there is no genuine dispute as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The party seeking summary judgment bears the burden of showing that there is no disputed issue of material fact. Celotex, 477 U.S. at 323. "A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party; a fact is material if its resolution affects the outcome of the case." Amini v. City of Minneapolis, 643 F.3d 1068, 1074 (8th Cir. 2011) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 252 (1986)).

    **B.   Constitutionality of the City's Announced Intended Enforcement Practice**

The City notes that Plaintiffs do not contend that the Ordinance is unconstitutional on its face. (Compl. ¶ 24.) Rather, Plaintiffs solely claim that "the announced enforcement practice" of Defendant is unconstitutional. (Id.) Specifically, Plaintiffs assert that three Moorhead police officers told Plaintiffs

that they would be arrested and prosecuted under the Ordinance based solely on the physical characteristics of some of the items in Discontent, regardless of the intent of the sellers or purchasers. (Id. ¶¶ 14, 28.)

### 1.    Constitutionality of the Ordinance as Written

The Ordinance is constitutional as written, as this Court already explained in its February 2012 Order, based on the Supreme Court opinion in <u>Posters 'N' Things, Ltd. v. United States</u>, upholding a very similar drug paraphernalia statute. 511 U.S. 513 (1994). Like the statute in <u>Posters 'N' Things</u>, the Ordinance contains a list of per se drug paraphernalia, which provides clear guidelines of prohibited conduct. <u>See</u> 511 U.S. at 525-26. The Ordinance also sets forth objective criteria to determine if other objects qualify as drug paraphernalia, which "minimize the possibility of arbitrary enforcement and assist in defining the sphere of prohibited conduct under the statute." <u>Id.</u> at 526. <u>See also</u> <u>Village of Hoffman Estates</u>, 455 U.S. at 500-03. Similar to the Ordinance here, the statute in <u>Posters 'N' Things</u> defines drug paraphernalia as "items 'primarily intended . . . for use' with controlled substances and items 'designed for use' with such substances." 511 U.S. at 518.

The Court rejects Plaintiffs' claim that their submission of affidavits averring that certain items have been used to smoke legal herbs and tobacco undermines the validity of the Supreme Court's decision in <u>Posters 'N' Things</u>. The new facts submitted by Plaintiffs do not make the Ordinance any vaguer than the law at issue in <u>Posters 'N' Things</u>. The new facts do not affect the constitutionality of the Ordinance or of the City's announced intention to enforce the Ordinance as written, particularly as to items explicitly listed in the Ordinance, as in this case. Rather, the new facts go to whether the criteria in the Ordinance have, in fact, been met – in other words, whether, if Plaintiffs were prosecuted, they would be found guilty.

### 2.  Defendant's Intended Enforcement Policy

The City's announced enforcement policy passes constitutional muster. All of the evidence before the Court supports the City's assertion that it intends to enforce the Ordinance as written. The transcript and officer affidavits support this view. Although the police did tell Plaintiffs that they viewed the pipes at issue to be drug paraphernalia, there is no evidence to contradict the police affidavits that their opinion was based on their experience as officers on drug-related cases and experience with drugs that the pipes fit the objective criteria

14

listed in the Ordinance. Moreover, as the Supreme Court has made clear, it is permissible for the Ordinance to apply regardless of Plaintiffs' subjective intent as sellers, and, based on an item's objective features, it can be designated as drug paraphernalia. The Supreme Court has squarely rejected the argument that a definition of "drug paraphernalia" must include an analysis of subjective intent. See Posters 'N' Things, 511 U.S. at 518, 526. Under the Constitution and the Ordinance as written, the Moorhead police officers were not required to determine whether Discontent employees specifically intended the items at issue to be used for drug consumption. Rather, the Ordinance requires only that a seller know or reasonably should know of use of the object with illegal drugs.

      Plaintiffs also argue that the Moorhead police have no foundation to provide expert testimony that the pipes sold by Discontent were designed for use with illegal drugs and are used primarily for this purpose because the police have no documented experience with legal smoking herbs and tobacco. The officers have not opined that the pipes at issue cannot theoretically be used for a lawful use. Rather, the police officers concluded that certain items in Plaintiffs' store met the definition of "drug paraphernalia" based on their knowledge and experience that the items are designed for use with illegal drugs and are used

almost exclusively for that unlawful purpose. The Moorhead police officers have significant experience with drug-related cases. Thus, they are qualified to give an opinion regarding which items meet the definition of "drug paraphernalia" in order to aid them in enforcing the ordinance.

### 3. Significance of Plaintiffs' Affidavits

The affidavits submitted by Plaintiffs in opposition to the City's summary judgment motion contain no disputed facts regarding the City's intended enforcement practice. The affidavits merely assert that Plaintiffs sell a variety of lawful tobacco substances, which are ordinarily and customarily smoked in devices that are defined as drug paraphernalia under the Ordinance (such as small-bowled glass, metal, and water pipes and bongs). The affidavits submitted by Plaintiffs from purported tobacco and herbal smoking experts do not touch on the relevant issue. The affidavits do not contradict the officer affidavits that the objects are commonly used for illegal drugs; they merely provide evidence that the objects also have legal uses.

Whether or not some legal herbs and tobacco may be smoked in the devices at issue could be relevant if there is a prosecution under the Ordinance, to attempt to show, for example, that Plaintiffs should not have reasonably

known that the items would be used illegally based on the additional use of the objects for legal smoking. But, at this point, there is no prosecution. Instead, all evidence shows that the City intends to enforce the Ordinance as written. The assertions in Plaintiffs' submitted affidavits do not undermine the constitutionality of the Ordinance and the City's announced intention to enforce the Ordinance as written.

Accordingly, based upon the files, records, and proceedings herein**, IT IS HEREBY ORDERED**:

Defendant's Motion for Summary Judgment [Docket No. 30] is **GRANTED** and this case is **DISMISSED WITH PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: January 10, 2013          s/ Michael J. Davis
                                 Michael J. Davis
                                 Chief Judge
                                 United States District Court